IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| MID-STATE SURETY CORPORATION | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO.:  AMD-00CV1037 |
| MADIGAN CONSTRUCTION CO., INC., et al. | * | |
| | * | |
| Defendants | | |

\* \* \* \* \*

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Mid-State Surety Corporation ("Mid-State" or the "Surety"), by its attorneys, Patrick M. Pike and Goldberg, Pike & Besche, P.C., submits this Memorandum of Law in Support of its Motion for Summary Judgment as to Count I of the Amended Complaint, against Defendants, Madigan Construction Co., Inc. ("Madigan Construction"), Paul W. Madigan ("Mr. Madigan") and Carolyn M. Madigan ("Ms. Madigan"), jointly, severally and/or individually (hereinafter, Madigan Construction, Mr. Madigan and Ms. Madigan shall sometimes be referred to, collectively, as the "Indemnitors"), and in support thereof, states:

### PROCEDURAL BACKGROUND AND UNDISPUTED FACTS

Mid-State commenced this case on or about April 11, 2000 with the filing of its Complaint against the Indemnitors. On or about October 12, 2000, Mid-State filed its Amended Complaint in this matter.[1] Generally, Mid-State alleges that it issued various construction contract performance and payment bonds (collectively, the "Bonds"), as surety, on behalf of

---

[1] The Indemnitors have never filed an Answer to the Amended Complaint.

Madigan Construction, as principal, in connection with seven construction projects located in the State of Maryland (collectively, the "Projects"). In consideration of the issuance of the Bonds, on September 8, 1997, the Indemnitors executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Mid-State. Pursuant to the Indemnity Agreement, the Indemnitors agreed, among other things, to reimburse and indemnify Mid-State, and to hold it harmless from and against any and all loss, cost and expense, including attorneys' fees, incurred by Mid-State as a result of having issued the Bonds to Madigan Construction. The Indemnitors' obligation to indemnify Mid-State includes the reimbursement of all costs and expenses incurred by Mid-State in pursuing or enforcing its rights pursuant to the provisions of the Indemnity Agreement. A copy of the Indemnity Agreement is attached hereto and incorporated herein as Exhibit 1.

On or about June 30, 2000, Mid-State filed an Application for Temporary Restraining Order and Preliminary Injunction, and a Memorandum of Law in Support thereof. Essentially, and as this Court later found, Mid-State's application for injunctive relief amounted to a motion for summary judgment to enforce Mid-State's demand on the Indemnitors, pursuant to the terms of the Indemnity Agreement, to post collateral security to hold Mid-State harmless against claims made against the Bonds. The parties fully briefed the issues surrounding Mid-State's application for injunctive relief, and a hearing was held before the Honorable André M. Davis on October 12, 2000.

At the Hearing, the parties stipulated to the existence of 75 facts relevant to the case. A copy of the Stipulation of Facts entered at the Hearing is attached hereto as Exhibit 2. In addition, the Court admitted some 64 trial exhibits into evidence. An index of the trial exhibits previously admitted into evidence in this case is attached hereto as Exhibit 3. Among the trial

exhibits entered into evidence were the Bonds, the Indemnity Agreement, and letters from the Project owners on all seven bonded contracts declaring Madigan Construction to be in default of its obligations under its construction contracts, and terminating Madigan Construction for default.

On October 26, 2000, after a hearing, Judge Davis entered an Order requiring the Indemnitors to post $600,000.00 in collateral security with Mid-State. The amount of collateral demanded and obtained by Mid-State at the time of the hearing was based upon the amount of losses incurred and paid by Mid-State, as surety, to that date. A copy of Judge Davis' First Order for collateral security is attached hereto as Exhibit 4.

Despite the Court's Order, the Indemnitors failed and refused to produce the required collateral. After making numerous demands on the Indemnitors, through counsel, Mid-State moved to hold the Indemnitors in civil contempt of court on December 14, 2000.

After the Indemnitors filed their "Answer" and Mid-State filed it's Reply, the Court issued a Show Cause Order for Contempt on March 29, 2001. In response to the Show Cause Order, the Indemnitors eventually conveyed to Mid-State interests in real property allegedly worth $600,000.00. By this time, however, it was apparent that Mid-State's losses would far exceed the Surety's original projections, which were originally based at that time on the representations of Madigan Construction. Accordingly, on or about April 26, 2001, Mid-State filed a Second Motion for Summary Judgment, seeking an additional deposit of collateral security from the Indemnitors in the aggregate amount of $2,634,616.15. Once again, the issues were fully briefed by the parties and, on or about June 4, 2001, Judge Davis entered an Order requiring the Indemnitors to deposit additional collateral security, bringing the aggregate amount of collateral to be held by Mid-State to $1,000,000.00. A copy of Judge Davis' June 4, 2001

Order is attached hereto as <u>Exhibit 5</u>.  Despite the entry of the second Order for collateral security and numerous efforts, meetings, correspondence, etc. directed by Mid-State to the Indemnitors, the Indemnitors have never deposited the additional collateral security.  In addition, the Indemnitors have failed and refused to reimburse Mid-State for any of the costs and expenses it incurred in obtaining the two collateral security Orders and the $600,000.00 in collateral security, as required by both of Judge Davis' Orders.

On or about October 26, 2001, Mid-State filed its initial Motion for Summary Judgment for indemnity against the Indemnitors.  The Indemnitors responded in Opposition to Mid-State's Motion for Summary Judgment on or about November 13, 2001.  The Indemnitors opposed Mid-State's Motion for Summary Judgment on two grounds.

First, the Indemnitors' counsel of record at that time, Brian Jablon, Esquire, stated that he had only entered his appearance in the case on August 1, 2001.  The Indemnitors further stated that Mid-State had failed to respond fully to outstanding discovery and, accordingly, it would be improper for the Court to grant summary judgment.

In fact, as of the time of the Indemnitors' Opposition, Mr. Jablon was the third counsel to have formally entered his appearance in this action.[2]

The Indemnitors were initially, formally represented in this case by F. Kirk Kolodner and Russell G. Alion, Jr., and the firm of Adelberg, Rudow, Dorf, Hendler & Sameth, LLC ("Adelberg, Rudow").  On August 11, 2000, Adelberg, Rudow filed its Motion to Strike Appearance, contending that the Indemnitors had consistently failed and refused to assist, cooperate with, or even respond to counsel in connection with this case.  On August 14, 2000,

---

[2]  In addition to counsel who formally entered their appearance in this matter, at least two other law firms had actually represented the Indemnitors during the pendency of this action but, for whatever reason, neither set of attorneys formally entered their appearances in this case.

4

Judge Davis signed an Order striking Adelberg, Rudow's appearance on behalf of the Indemnitors. (See papers nos. 14 through 18).

Thereafter, Thomas A. Baker, Esquire entered his appearance as the second counsel of record for the Indemnitors. On or about August 7, 2001, Mr. Baker also withdrew his appearance as counsel due to disputes with the Indemnitors concerning the handling of this action. (See paper no. 39).

In any event, as of the time the Indemnitors' third counsel of record filed the Opposition, all of Mid-State's documents had in fact been produced or made available to counsel for the Indemnitors on more than one occasion. In fact, Mid-State's documents had been reviewed, and, at least to some extent, copied by several prior counsel for the Indemnitors. Accordingly, the Indemnitors' contention in their Opposition that Mid-State had failed to comply with discovery requests was inaccurate at the time it was made.

The second basis for the Indemnitors' Opposition was, generally, that the costs incurred by Mid-State in completing the defaulted construction Projects, and paying laborers and materialmen on those Projects, were not fully documented, or were otherwise incurred and paid by the Surety in bad faith. The Indemnitors argued, essentially, that even though Madigan Construction had been terminated for default on each and every construction Project bonded by Mid-State, and had failed to pay scores of subcontractors and suppliers, Madigan Construction's original as-bid prices for the work it could not complete should have been the absolute limit of Mid-State's costs in meeting its independent obligations under the Bonds. The Indemnitors went so far as to argue that Mid-State should have actually made a profit on the defaulted Projects, even though Madigan Construction admitted by stipulation that it was unable to complete any of the Projects, or to pay the subcontractors and suppliers it had contracted with.

Notwithstanding Mid-State's complete disagreement with the position taken by the Indemnitors, and as a concession to Mr. Jablon, Mid-State agreed to request a deferral of a ruling on its outstanding Motion for Summary Judgment, and to once again provide the Indemnitors' third counsel of record with access to all of Mid-State's files. In addition, Mid-State provided a designee deponent in the person of its Claim Manager, Mr. B. Michael Bowen, for deposition, as well as its consultant and the president of its completion contractor, Mr. Lyn Farley of Saguaro Construction Company. The Bowen and Farley depositions were taken and concluded by counsel for the Indemnitors. Mid-State also began, but never concluded, the deposition of Paul W. Madigan, Madigan Construction's president. Despite numerous requests and promises from counsel for the Indemnitors, Paul W. Madigan has never been made available to counsel for Mid-State to complete his deposition.

On or about July 10, 2003, Mr. Jablon and the law firm of Saltzman and Jablon, LLC moved to withdraw their appearance as counsel for the Indemnitors. On information and belief, the grounds for counsel's withdrawal were, once again, the Indemnitors' failure to cooperate in the defense of this matter, and/or their failure to compensate counsel. The Court granted Saltzman and Jablon, LLC's Motion to Withdraw. (See paper nos. 57 through 59).[3]

On August 21, 2003, Mid-State propounded its First Request for Admissions on the Indemnitors. Attached as Exhibits 1 through 6 to Mid-State's First Request for Admissions are summaries identifying each payment made by Mid-State in connection with the six construction Projects that are the subject of this action.[4]

---

[3] On July 11, 2003, the Court (Judge Richard D. Bennett) mailed a Local Rule 101.2 Notice to the Indemnitors. None of the Indemnitors have responded in any fashion, nor have any appearances been entered on behalf of any of the Indemnitors. Accordingly, Madigan Construction is currently in default pursuant to Local Rule 101.2.b.

[4] By Stipulation approved by Judge Davis, Mid-State and the Indemnitors agreed that the dispute concerning the Estep Bros. Funeral Home, Inc. Project would be submitted to arbitration following resolution of this matter. Despite Mid-State's several requests to arrange an arbitration, and Mid-State's production of information to the

In order to address the Indemnitors' claim that they had not been provided with full discovery responses, Mid-State's First Request for Admissions requested the following:

1. That pursuant to Madigan's Requests for Production of Documents, Mid-State produced or made available for production to Madigan all Documents, including without limitation, bonds, contracts, Correspondence, invoices, bills, time records, cancelled checks, receipts, releases, assignments and plans and specifications, maintained, received and/or generated by Mid-State, Goldberg, Pike & Besche, P.C. and Saguaro Construction, Inc., and documenting, explaining and confirming the payments set forth on Exhibits 1 through 6, attached hereto.

2. That in connection with the depositions of B. Michael Bowen and Lyn Farley, Mid-State produced or made available for production to Madigan all Documents, including without limitation, bonds, contracts, Correspondence, invoices, bills, time records, cancelled checks, receipts, releases, assignments and plans and specifications, maintained, received and/or generated by Mid-State, Goldberg, Pike & Besche, P.C. and Saguaro Construction, Inc., and documenting, explaining and confirming the payments set forth on Exhibits 1 through 6, inclusive.

3. That pursuant to Madigan's Requests for Production of Documents, Mid-State produced or made available for production to Madigan all documents, including, without limitation, all Correspondence, claims bills and invoices describing and supporting Mid-State's payments to all suppliers of labor, materials and services required for the fulfillment of Mid-State's obligations pursuant to the performance and payment bonds identified on Exhibits 1 through 6, inclusive.

4. That the information contained on Exhibits 1 through 6 represents a true and accurate summary of payments made by Mid-State, as surety, in connection with its obligations pursuant to the performance and payment bonds identified thereon.

29. That Exhibits 1 through 6 are admissible in evidence to conclusively establish the current amount of loss, cost and expense payments incurred and paid by Mid-State as a result of the issuance by Mid-State, as surety, of performance and payment bonds on behalf of Madigan, as principal.

---

Indemnitors concerning its losses on the Estep Bros. Funeral Homes, Inc. Project, the Indemnitors have failed to comply with prior agreements to schedule an arbitration. Mid-State will demand arbitration of the Estep Bros. Funeral Home, Inc. matter after resolution of this case.

7

In order to establish the fact, amount and propriety of Mid-State's payments pursuant to the Bonds, with respect to each payment identified on Exhibits 1 through 6 attached to Mid-State's First Request for Admissions, the Indemnitors were asked for four admissions:

(1) That each payment identified on [the] Exhibit …, was made by Mid-State to the Person identified thereon, and in the amount show, pursuant to Mid-State's obligation pursuant to Performance and Payment Bonds No. [the appropriate Bond No. for the Project].

(2) That each payment identified on [the] Exhibit …, was made by Mid-State in good faith after an evaluation of the merits of and support for each claim, in the belief that the payment made was fully due and owing.

(3) That each payment identified on [the] Exhibit …, was made by Mid-State to the Person indicated without any motive or intention to injure or defraud Madigan, and without any malice or improper purpose toward Madigan.

(4) That the amount of each payment identified on [the] Exhibit …, was reasonable under the circumstances.

Unfortunately, after Mid-State's First Request for Admissions was served, a clerical error was discovered regarding two entries on Exhibit 5. (See Exhibit 5, Affidavit of B. Michael Bowen, at paragraph 13). Accordingly, on September 29, 2003, Mid-State filed a second, limited Request for Admissions, simply correcting the clerical errors to restate the actual amounts of two payments made to Saguaro Construction Company. As indicated above, copies of Saguaro Construction Company's invoices, and copies of the cancelled checks reflecting the amount of payments, were previously produced to the Indemnitors on several occasions, through the process of discovery.

Copies of Mid-State's First and Second Requests for Admissions, and Notices of Service of Discovery Materials, are attached hereto and incorporated herein as Exhibits 7 and 8, respectively.

The Indemnitors have failed to timely respond to either of Mid-State's First or Second Requests for Admissions. Accordingly, pursuant to Fed. R. Civ. P. 36, the facts and contentions contained in Mid-State's First and Second Request for Admissions are admitted.

Attached as <u>Exhibit 6</u> is the Affidavit of B. Michael Bowen. Mr. Bowen is the Claims Manager for Mid-State, and at all relevant times, was directly responsible for and in charge of receiving, reviewing, evaluating, adjusting and, if appropriate, paying claims made against the Bonds, and in retaining professionals, including consultants and attorneys, to assist in defending the numerous claims made by Project owners, subcontractors and suppliers, and in pursuing this action. As set forth in Mr. Bowen's Affidavit, since the initial filing of Mid-State's Motion for Summary Judgment in October of 2001, Mid-State has incurred additional loss, cost and expense in completing construction Projects pursuant to its performance bond obligations, paying laborers and materialmen pursuant to its payment bond obligations, and reimbursing consultants and attorneys in connection with defending litigation brought by Bond claimants and prosecuting Mid-State's recovery rights pursuant to the Indemnity Agreement. In addition, Mr. Bowen's Affidavit identifies substantial recoveries in mitigation of its loss made by Mid-State through asserting claims against various Project owners; including the Baltimore County Public Schools, the Maryland Aviation Administration and the Howard County Board of Education (hereinafter, collectively, the "Recovery Litigation").[5]

Mr. Bowen's Affidavit, among other things, sets forth the total amount of payments made by Mid-State pursuant to its obligations under the Bonds (hereinafter the

---

[5] The Indemnitors were represented in connection with the Recovery Litigation by the law firm of Huddles & Jones. As indicated in Mr. Bowen's Affidavit, the Indemnitors, through Huddles & Jones, agreed to the resolution of the Recovery Litigation, including the amounts obtained by Mid-State.

9

"Aggregate Loss"), and the total amount of recoveries obtained by Mid-State in mitigation (hereinafter the "Total Recoveries"). The Aggregate Loss has been admitted by the Indemnitors in Mid-State's First and Second Requests for Admissions. The amount of Total Recoveries has been subtracted from the Aggregate Loss. Accordingly, Mr. Bowen's Affidavit and the admissions of the Indemnitors conclusively establish Mid-State's net loss in the amount of $1,264,566.86.

## ARGUMENT

## THE INDEMNITY AGREEMENT

### Right to Reimbursement

Paragraph 2 of the Indemnity Agreement provides as follows:

> 2. That the Indemnitor will perform all the conditions of each said bond or obligation, and any and all alterations, modifications, renewals, continuations, and extensions thereof, and will at all times indemnify and save the Company harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, payable on demand of Surety, whether actually incurred or not, (including fees of special counsel whenever by [Mid-State] deemed necessary) expense, suit, order, judgment and adjudication whatsoever, and any and all liability therefore, sustained or incurred by [Mid-State] by reason of having executed or procured the execution of said bonds or obligations, and will place [Mid-State] in funds to meet same before it shall be required to make payment, and in case the Indemnitor requests [Mid-State] to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of [Mid-State], place it in funds sufficient to defray all expenses and all judgments that may be rendered therein.

As previously briefed and argued to this Court, when it is seeking recovery pursuant to a written agreement of indemnity, a surety is entitled to be reimbursed for all loss, cost and expense it incurs, provided that the surety's payments were made in good faith. Conversely, the only defense to a surety's recovery under a written indemnity agreement is that the surety acted in bad faith or fraudulently. See, *Fidelity and Deposit Company of Maryland v.*

10

*Bristol Steel and Ironworks, Inc.*, 722 F.2d 1160 (4th Cir., 1983).  Good faith necessarily implies honesty of purpose and the absence of any intention to deprive others of rights or property to which they are entitled.  Proof of "lack of good faith" generally requires a showing of dishonest purpose or improper motive.  *Engbrock v. Federal Insurance Company*, 370 F.2d 784 (5th Cir. 1967).

This Court has already found, by clear and convincing evidence, that Mid-State was entitled to a deposit of collateral security pursuant to the terms of the Indemnity Agreement.  In fact, the Court has made this finding <u>twice</u>.  (See <u>Exhibits 4 and 5</u>, paper nos. 25 and 38).  It is respectfully submitted, therefore, that this Court has already found Mid-State to have been acting in good faith in connection with its dealings with the Indemnitors.

Notwithstanding this procedural history, however, as the stipulated facts, admissions, admitted trial exhibits and the Bowen Affidavit clearly establish, there is no dispute concerning the amount of Mid-State's Aggregate Loss or Total Recoveries.  Further, the Indemnitors have admitted that all payments made by Mid-State were reasonable under the circumstances, made in good faith, and made without improper motive or purpose.  Accordingly there is no genuine issue as to any material fact concerning Mid-State's entitlement to judgment against the Indemnitors, as a matter of law.  Fed. R. Civ. P. 56(c).

### **The Indemnitors Bear the Burden of Proof**

Paragraph 5 of the Indemnity Agreement provides as follows:

> 5.   That the Company shall have the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefore to the Company.

11

In executing the Indemnity Agreement, the Indemnitors granted Mid-State the bargained-for right to settle claims and incur expenses.  Additionally, the Indemnity Agreement provides that a "voucher or other evidence of such payment[s] shall be *prima facie* evidence of the propriety thereof …"

Courts have routinely upheld clauses in indemnity agreements providing that vouchers or other evidence of payment will be *prima facie* evidence of the propriety of the surety's payment, and the amount of the indemnitors' liability to the surety.  See *Continental Cas. Co. v. American Sec. Corp.*, 443 F.2d 649 (D.C. Cir. 1970), cert. denied, 402 U.S. 907, reh'g denied, 403 U.S. 912 (1971); *Transmerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968); *Hartford Acc. & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass.App. 998, 418 N.E.2d 645, 647 (Mass. App. Ct. 1981); *U.S. Fidelity & Guar. Co. v. Napier Electric & Constr. Co., Inc.*, 571 S.W.2nd 644, 646 (Ky. App. 1978); *Standard Acc. Ins. Co. v. Higgins*, 9 Misc.2d 371, 170 N.Y.S.2d 73, 75 (N.Y. Supp. 1957); *Engbrock v. Federal Ins. Co.*, 370 F.2d 784 (5th Cir. 1967); *U.S. Fidelity & Guar. Co. v. Jones*, 87 F.2d 346, 348 (5th Cir. 1937).

In *Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co.*, 1989 WL 55388 (E.D. Pa. 1989), the court granted the surety's motion for damages and found that affidavits and supporting documentation of the amount and purposes of the surety's expenditures constituted *prima facie* evidence of the indemnitor's liability.

The Indemnitors have failed to answer the Amended Complaint, have failed to comply with this Court's second Order for Collateral Security, have failed to complete discovery as agreed, have failed to object or respond in any fashion to Mid-State's First and Second Request for Admissions, and have failed to comply with Local Rule 101.  The Indemnitors have

not, and cannot sustain **their burden** of showing that Mid-State's payments were made in **bad faith,** and/or that Mid-State's payments amounted to a **fraud** on the Indemnitors.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 56(c), summary judgment will be rendered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Based on the foregoing, Mid-State is entitled to the entry of summary judgment in its favor, and against Madigan Construction Company, Inc., Paul W. Madigan and Carolyn M. Madigan, jointly and severally, in the amount of $1,264,566.86.

_____
Patrick M. Pike – Trial Bar No.:  M04750
Michael A. Simpson – Trial Bar No.: 26091
Goldberg, Pike & Besche, P.C.
100 South Charles Street
Tower II, Suite 1001
Baltimore, MD 21201
(410) 539-1004

Attorneys for Mid-State Surety Corporation