IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MID-STATE SURETY CORPORATION, | : |
| Plaintiff, | : |
| | : Civil No. RDB 00-1037 |
| v. | : |
| | : |
| MADIGAN CONSTRUCTION CO., INC., *et al.*, | : |
| Defendants. | : |

MEMORANDUM OPINION

Before the Court is Plaintiff Mid-State Surety Corporation's ("Mid-State") unopposed Motion for Summary Judgment as to Count I of the Amended Complaint.

Background

Mid-State commenced this action against Defendants Madigan Construction Co., Inc., Paul W. Madigan, and Carolyn M. Madigan seeking recovery pursuant to a written agreement of indemnity on April 11, 2000. On October 12, 2000, Mid-State filed an Amended Complaint against Defendants alleging the following claims: breach of contract (Counts I, II and V), common law indemnity (Count III), *quia timet* (Count IV), and conversion (Count VI). Federal jurisdiction rests on diversity. *See* 28 U.S.C. § 1332(a).

The following facts are undisputed. Mid-State, as surety, issued various construction contract performance and payment bonds (collectively, the "Bonds") on behalf of Madigan Construction Co., Inc. ("Madigan Construction"), as principal, in connection with six public improvements construction projects located in the State of Maryland.[1] Four of the projects involve school construction for the Baltimore

---

[1] A seventh project, involving the Estep Brothers Funeral Home, for which bonds were issued, is the subject of arbitration proceedings expected to commence after the resolution of this case.

County and Howard County School Systems, one project involves construction at the Baltimore-Washington International Airport for the Maryland Aviation Administration, and the remaining project involves construction at the Maryland Port Authority Seagirt Terminal. Madigan Construction was required by the Maryland Little Miller Act, Md. Code Ann., State Fin. & Proc. §§ 17-101 - 17-111, to obtain the Bonds to protect the interests of the State and its agencies and to insure payment to laborers and materialmen providing work on the public improvements.

In consideration of the issuance of the Bonds, on September 8, 1997, Defendants executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Mid-State. Defendants agreed, *inter alia*, to reimburse and indemnify Mid-State and to hold it harmless from and against any and all losses, costs and expenses, including attorneys' fees, incurred by Mid-State by reason of having issued the Bonds to Madigan Construction.

Madigan Construction was terminated for default by the owners of each of the bonded projects.[2] Thereafter, Mid-State completed the defaulted construction projects, and various subcontractors and suppliers asserted claims against Mid-State pursuant to the Bonds. On June 30, 2000, Mid-State filed an Application for a Temporary Restraining Order and Preliminary Injunction to compel Defendants to post collateral security to hold Mid-State harmless against claims made against the Bonds. The motion was

---

[2]Madigan Construction's contract was terminated on January 26, 2000 for the Kenwood High School Project. Its contracts were terminated on March 15, 2000 for the Johnnycake Elementary School and the Shady Spring Elementary School Projects. Its contract was terminated on June 16, 2000 for the Ilchester Elementary School Project. Its contract was terminated on July 7, 2000 for the Seagirt Terminal Crane Service Building Project. On that same date, the Maryland Aviation Administration informed Mid-State that Madigan Construction would not be allowed to complete outstanding punchlist work on the Police Facility at the BWI Airport Project.

treated as one for summary judgment and granted on October 26, 2000 by the Honorable Andre M. Davis of this Court. Defendants did not comply with the Court's Order, and on December 14, 2000, Mid-State moved to hold Defendants in contempt. Following Judge Davis's issuance of a Show Cause Order for Contempt, Defendants conveyed interests in real property worth $600,000 to Mid-State as collateral security.

Because it appeared that its losses would far exceed its original projections, Mid-State filed a second motion for summary judgment on April 26, 2001 seeking an order compelling Defendants to provide additional security for Mid-State's payment and losses. On June 4, 2001, Judge Davis granted summary judgment on Counts II and IV and ordered Defendants to deposit additional collateral to raise the aggregate amount held by Mid-State to $1,000,000 and to reimburse Mid-State for the costs and expenses it incurred in filing the motion. Defendants did not comply with the Court's directive.

On October 26, 2001, Mid-State filed a motion for summary judgment on its indemnity claim. By agreement of the parties, the Court deferred ruling on the motion, because Defendants had retained new counsel, Brian S. Jablon, Esquire. Mid-State provided Mr. Jablon with access to all of its files and produced its Claim Manager, B. Michael Bowen, and the president of its completion contractor, Lyn Farley, for depositions. Mid-State began, but was never allowed to complete, the deposition of Paul W. Madigan. On July 11, 2003, the Court granted Mr. Jablon's motion for leave to withdraw as counsel for Defendants. Madigan Construction has not retained new counsel as required by Local Rule 101.2.

On August 21, 2003, Mid-State served its First Request for Admissions upon Defendants. Attached as exhibits to the Request were summaries identifying each payment made by Mid-State in connection with the six public projects. Mid-State sought to establish (1) that Defendants had received

all discovery necessary to evaluate its claim for indemnity and (2) the fact, amount and propriety of each of the payments Mid-State made pursuant to the Bonds.  On September 29, 2003, Mid-State served a Second Request for Admissions upon Defendants noting two clerical errors in the amounts depicted as payments under Bond Nos. 320228 and requesting that Defendants admit to the correct amount of those payments.  Defendants did not respond to either set of Requests.

On October 31, 2003, Mid-State filed the instant Motion for Summary Judgment.  Defendants have had ample opportunity to file a response but have not done so.  The Court has notified Defendants in writing of its intention to rule on the motion.

Analysis

There is no dispute that Defendants bound themselves to the terms of the Indemnity Agreement.  The Indemnity Agreement, executed by Defendants, provides at paragraph 2 that

> the Indemnitor [Defendants] will perform all the conditions of each said bond or obligation, and any and all alterations, modifications, renewals, continuations, and extensions thereof, **and will at all times indemnify and save the Company [Mid-State] harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, payable on demand of Surety [Mid-State], whether actually incurred or not, (including fees of special counsel whenever by the Company deemed necessary) expense, suit, order judgment and adjudication whatsoever, and any and all liability therefore [sic], sustained or incurred by the Company by reason of having executed or procured the execution of said bonds or obligations, and will place the Company in funds to meet same before it shall be required to make payment**, and in case the Indemnitor requests the Company to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Company, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein.

Pltf.'s Ex. 1 at 1 (emphasis supplied).

4

Pursuant to its performance bond obligations, Mid-State completed or caused the completion of all of the projects subsequent to Madigan Construction's default. Mid-State received, reviewed, evaluated, adjusted, and paid claims made against the Bonds by Madigan Construction's subcontractors and suppliers. According to the Affidavit of B. Michael Bowen, Mid-State reviewed all charges submitted to ensure that the services performed were reasonably necessary in connection with Mid-State's fulfillment of its obligations under the Bonds. *See* Pltf.'s Ex. 6 at 2. Mid-State also verified and ensured that the "amounts charged were fair and reasonable and consistent with, or below[,] the amounts charged, generally, in the surety industry in connection with the evaluation and adjustment of claims under performance and payment bonds, and the completion of construction projects following the default termination of bond principals." *Id.*

Mid-State also retained and paid consultants and attorneys in connection with defending litigation brought by Bond claimants and enforcing its rights under the Indemnity Agreement. *Id.* at 3. All litigation in connection with those claims has been concluded. *Id.*

Defendants have failed and refused to indemnify Mid-State for its costs, expenses, and losses incurred in performing its obligations under the Bonds. Mid-State has submitted evidence of its payments. The Indemnity Agreement at paragraph 5 states that "**the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefore [sic] to the Company**." Pltf.'s Ex. 1 at 1. (emphasis supplied). Exhibits 1 through 6 attached to Mid-State's First and Second Requests for Admissions (Pltf.'s Ex. 7) contain a summary of the date, recipient, and amount of each payment made by Mid-State to project owners, laborers, materialmen, consultants, and attorneys in connection with the adjustment of claims asserted against each bond. During discovery,

Mid-State produced or made available for production "all documents, including bonds, contracts, correspondence, invoices, bills, time records, canceled checks, receipts, releases, assignments and plans and specifications maintained, received and/or generated by Mid-State, its attorneys and Saguaro Construction, Inc. . . . documenting, explaining and confirming the payments set forth on Exhibits 1 through 6." *See id.* Mid-State also produced or made available for production "all correspondence, claims bills and invoices describing and supporting Mid-State's payments to all suppliers of labor, materials and services required for the fulfillment of Mid-State's obligations pursuant to the performance and payment bonds identified on Exhibits 1 through 6." *Id.* These records are prima facie evidence of the fact and extent of Defendants' liability under the Indemnity Agreement.

In addition, by their failure to respond to the First and Second Requests for Admissions, Defendants are deemed to have admitted that the information contained on Exhibits 1 through 6 represents a true and accurate summary of the payments Mid-State made. Moreover, Defendants have admitted that Mid-State acted in good faith after an evaluation of the merits of and support for each claim and without any malice or improper purpose toward Defendants. *See* Fed. R. Civ. P. 36(a) (matters of which admission is requested are admitted unless, within thirty days after service of request, the party to whom the request is directed serves upon the requesting party a written answer or objection).

The undisputed evidence establishes that Mid-State's payments and losses pursuant to its payment bond obligations have been liquidated, and the aggregate amount of all payments made by Mid-State in connection with loss, cost and expense, in connection with the Bonds, is $3,270,943.44 (Mid-State's "Total Loss").

In addition, Mid-State identified various claims against project owners and, together with former

counsel for Madigan Construction, asserted and resolved claims against those owners. With one minor exception,[3] Mid-State recovered all sums potentially due from project owners, whether deriving from the recovery of the balance of contract receivables on various projects, or from the assertion of claims against the project owners. The total amount of recoveries obtained by Mid-State is $2,006.376.58 (Mid-State's "Recoveries"). Mid-State does not anticipate receiving any other recoveries in connection with the Bonds or projects, but will credit or return to Defendants any such recovery made after the date of payment by Defendants to Mid-State.

After crediting Mid-State's Recoveries against its Total Loss, the total amount owed by Defendants to Mid-State, as established by the Affidavit of B. Michael Bowen and the admissions of Defendants, is $1,264,566.86.

Defendants have offered no defense to recovery of this sum by Mid-State. *See Fidelity and Deposit Co. of Maryland v. Bristol Steel and Ironworks, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983) (sole defense to surety's recovery of payments made under written indemnity agreement is that payment was made in bad faith or through fraud).

## Conclusion

For all of the foregoing reasons, the Court will grant summary judgment in favor of Mid-State on Count I of the Amended Complaint. An appropriate order will be entered.

/s/

---

[3] Mid-State anticipates receiving a final payment in the amount of approximately $21,000 from the Howard County Public Schools in connection with the Ilchester Elementary School Project, but for purposes of its Motion for Summary Judgment has treated that sum as being received and has credited the amount against the damages it seeks in the Motion.

January 6, 2004

                                                                                     Richard D. Bennett  
                                                                                      United States District Judge